**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RYSZARD ZIELINSKI | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| SPS TECHNOLOGIES LLC | : | NO. 10-3106 |
| Defendant. | : | |

**MEMORANDUM ON DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF**
**LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL**

Baylson, J.                                                      November 22, 2011

## I.      Introduction

After a trial by jury in which a verdict was entered in favor of Plaintiff Ryszard Zielinski

("Zielinski") and against Defendant SPS Technologies, LLC ("SPS"), Defendant submitted this

Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial (ECF No.

67).  For the reasons stated below, the Motion is (1) DENIED insofar as it seeks judgment as a

matter of law, (2) DENIED insofar as it seeks a new trial on liability, and (3) GRANTED insofar

as it seeks a new trial on damages, UNLESS, within 30 days, Plaintiff accepts a remittitur

limiting emotional distress damages to $100,000 and punitive damages to $327,500, in which

event the Motion will also be DENIED insofar as it seeks a new trial on damages.

## II.     Background and Procedural History in this Court

SPS, a manufacturer of aerospace fasteners, operates a plant in Jenkintown, Pennsylvania

with approximately 1000 employees.  Zielinski, a Polish-born immigrant who came to the United

States in 1987, was employed as a machinist at the plant from December 1997 to January 2009,

when SPS terminated his employment.

On June 28, 2010, Zielinski filed a Complaint alleging that (1) SPS discriminated against him on the basis of his Polish ancestry, in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) SPS retaliated against him for complaining to SPS's management and to the Equal Employment Opportunity Commission about inappropriate ethnic comments in the workplace, in violation of 42 U.S.C. § 1981 and Title VII; and (3) SPS subjected him to a hostile work environment, in violation of 42 U.S.C. § 1981 and Title VII.  After a four-day trial by jury, a verdict was returned for Zielinski.  The jury awarded him $85,000 in back pay, $100,000 in front pay, $250,000 in emotional distress damages, and $500,000 in punitive damages, for a total of $935,000 in damages. _

On September 1, 2011, SPS timely filed the instant Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial (ECF No. 67).  On September 22, 2011, Zielinski filed his response (ECF No. 70), and on October 12, 2011, SPS replied (ECF No. 72).  On October 18, 2011, the Court invited Zielinski to submit a supplemental brief discussing Supreme Court and Third Circuit case law supporting the amount of emotional distress damages awarded to him by the jury (ECF No. 73).  Zielinski submitted his supplemental brief on October 27, 2011 (ECF No. 74).

**III.   Legal Standard**

Judgment as a matter of law may be granted pursuant to Federal Rule of Civil Procedure 50(b) when "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a).  In conducting its analysis, the Court must "view[ ] the evidence in the light most favorable to the non[-]movant and giv[e]

[him] the advantage of every fair and reasonable inference." Fowler v. UPMC Shadyside, 578

F.3d 203, 213 n.8 (3d Cir. 2009). The Court may not "weigh the evidence, determine the

credibility of witnesses, or substitute its version of the facts for the jury's version." Id. Indeed,

the Court must "disregard all evidence favorable to the moving party that the jury is not required

to believe." Springer v. Henry, 435 F.3d 268, 281 (3d Cir. 2006). The relevant inquiry "is not

whether there is literally no evidence supporting the party against whom the motion is directed

but whether there is evidence upon which the jury could properly find a verdict for that party."

Jaasma v. Shell Oil Co., 412 F.3d 501, 503 (3d Cir. 2005) (internal quotation marks omitted).

In the alternative, the Court may grant a new trial on some or all of the issues "for any

reason for which a new trial has heretofore been granted in an action at law in federal court."

Fed. R. Civ. P. 59(a)(1). For example, the Court may grant a new trial because (1) the verdict is

against the weight of the evidence, (2) the damages are excessive, or (3) substantial errors were

made in the admission or rejection of evidence or the giving or refusal of instructions. See

Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940). Generally, the decision to grant

or deny a new trial "is confided almost entirely to the discretion of the district court,"Blancha v.

Raymark Indus., 972 F.2d 507, 512 (3d Cir. 1992).

With respect to the amount of damages awarded by the jury, a "court may not vacate or

reduce the award merely because it would have granted a lesser amount of damages." Motter v.

Everest & Jennings, Inc., 883 F.2d 1223, 1230 (3d Cir. 1989). The award is to be upheld "if

there is a reasonable basis to do so." Id. However, if the Court believes a jury's award is

unreasonable in light of the facts, it may remit the award. Cortez v. Trans Union, LLC, 617 F.3d

688, 716 (3d Cir. 2010); see also William A. Graham Co. v. Haughey, 646 F.3d 138, 142 (3d Cir.

2011) ("A district court's decision regarding a request for a remittitur is reversed only for abuse

of discretion[.]").  Finally, if the Court determines that the award is constitutionally excessive, it

must reduce the award as a matter of law to the amount that conforms with due process.  Cortez,

617 F.3d at 716.

## IV.  Discussion

### A.  Motion for Judgment as a Matter of Law: Liability

SPS moves for judgment as a matter of law on multiple grounds. First, SPS claims that

judgment should be entered in its favor on Zielinski's discrimination claim because there was no

evidentiary basis for the jury to have concluded that Zielinski was suspended and terminated

because he was Polish.  Second, SPS argues that it cannot be found liable for retaliation because

there was insufficient evidence to prove a causal connection between Zielinski's protected

activity and the adverse employment actions.  Third, SPS contends that Zielinski's hostile work

environment claim fails as a matter of law both because it was barred by the statute of limitations

and because the evidence at trial did not demonstrate a work environment containing sufficiently

severe or pervasive discrimination.  The Court now discusses each of these claims in turn.

#### 1.  Zielinski's Discrimination Claim

Under 42 U.S.C. § 1981 and Title VII, a plaintiff pursuing a claim for discrimination on

the basis of national origin must first come forward with enough evidence to establish a prima

facie case.  See McDonnell Douglas Corp. v. Green, 411 U.S.  792, 802 (1973).  If the plaintiff

succeeds in establishing his prima facie case, the burden shifts back to the employer to establish a

legitimate, non-discriminatory reason for its action.  Atkinson v. LaFayette College, 460 F.3d

447, 454 (3d Cir. 2006).  Upon the employer's satisfaction of that standard, the burden shifts

again to the plaintiff to prove that the non-discriminatory explanation is merely a pretext for discrimination. Id.

SPS argues that no reasonable juror could have determined from the evidence at trial that SPS's articulated reason for disciplining Zielinski—namely, his repeated offensive and inappropriate behavior towards his co-workers—was a pretext for discrimination. Viewed in the light most favorable to Zielinski, the trial record establishes the following facts, among others. Beginning in 2004, Zielinski's group leader at the plant, Al Weikel ("Weikel"), began subjecting him to discriminatory and harassing comments. For example, Weikel called Zielinski a "dumb Polack," suggested that he go back to his own country, and made fun of Zielinski's accent. (Tr. I-40.) In 2005, Zielinski complained about Weikel's comments to his manager, Mike Zataveski ("Zataveski"), who in turn reported them to SPS Human Resources ("HR"). (Tr. I-151.) The complaint was investigated, and as a result, Weikel and Zielinski were told that discriminatory language would not be permitted. (Tr. I-96, 166, Exh. D-1.) However, no formal discipline was imposed on either party.

In July 2006, Zielinski received his first discipline from SPS, after never having been disciplined in his previous nine years on the job. Specifically, Zielinski was suspended for three days after he allegedly pushed a co-worker. (Tr. I-106-07.) Zielinski testified that he did not push his co-worker but rather merely inserted himself sideways between two co-workers who were preventing him from clocking in for work. (Tr. I-52-54.)

During that period and thereafter, Zielinski was subjected to additional discriminatory harassment from two other co-workers in the thread roll department, Keith Strickland ("Strickland") and John Janiszewski ("JJ"). Strickland and JJ called him a "dumb Polack" and

5

told him to "speak English;" in addition, Strickland began stealing Zielinski's production time. (Tr. I-43-44.)  In May 2007, Zielinski complained to Zataveski's replacement, Bob Costello ("Costello"), about this treatment.  Costello took no action in response to this complaint, and at trial he denied that Zielinski had ever complained to him.  (Tr. II-56.)

Around the same time in early 2007, Strickland and JJ initiated what would become a long series of complaints to SPS that Zielinski was misbehaving and harassing them.  Viewing the evidence in the light most favorable to Zielinski, the jury could have concluded these complaints were another manifestation of JJ's and Strickland's anti-Polish discriminatory tactics. The jury also could have concluded that Costello's involvement was discriminatory in nature.

Specifically, in early 2007 Strickland and JJ complained to Costello that Zielinski was whistling and staring at them.  (Tr. II-104-06, 175-76, Exh. D-3.)  Though Zielinski denied this conduct, Costello verbally admonished Zielinski about his co-workers' complaints on multiple occasions.  (Exh. D-3, D-4.)  On the other hand, Costello did not take any corrective action regarding Zielinski's own complaints about Strickland and JJ.  (Tr. I-44-45.)

Strickland and JJ's complaints persisted.  In late August or early September 2008, JJ claimed to HR that Zielinski's improper whistling and staring was escalating.  (Tr. II-171-72, 176-78.)  As a result, on September 2, 2008, Zielinski was called to a meeting with HR employee Jerry Creed ("Creed") to discuss JJ's accusations and to warn him that he would be suspended if he did not stop.  (Tr. I-223-25.)  In that meeting, Zielinski again reported that Strickland and JJ were harassing him because he was Polish.  (Tr. I-55.)  In response, Creed eventually questioned Strickland and JJ about whether they had been harassing Zielinski.  They denied it, and Creed declined to investigate the matter further.  (Tr. I-232-33.)

6

Later that month, Strickland complained again to HR that Zielinski continued to whistle and stare at him, and was banging a bolt on a metal pan near Strickland in a harassing manner. (Exh. D-6.)  Costello claimed that he, too, observed Zielinski's conduct.  (Tr. II-70-73.)  As a result, on September 11, 2008 SPS suspended Zielinski's employment for three days and required him to attend an Employee Assistance Program before he could return to work.  (Tr. I-229-31.)

 Five weeks later, on October 16, 2008, Zielinski and JJ got into an argument, and both were called into the office of operations manager Tim Walsh ("Walsh").  (Tr. II-179-80.) Strickland and another employee, Bob Holena, both of whom had observed the argument, were also called in.  After the other three were permitted to leave, Zielinski was admonished by Walsh that he needed to stop his misbehavior.  (Tr. I-174-76.)  Zielinski attempted to explain that he was being picked on because he was Polish, but Walsh disregarded his concerns.  (Tr. I-175.)

At trial, the testimony of two employees—Walsh, whose office was near Zielinski's work area, and Curtis LaPlaunt, another thread roll employee—corroborated Zielinski's testimony that he had never harassed Strickland and JJ in the ways they claimed.  (Tr. I-172-73, II-91-92.)  In years of working with Zielinski, neither Walsh nor LaPlaunt ever saw Zielinski act improperly toward his co-workers; according to Walsh, he observed Zielinski to be "pleasant," and his admonishment of Zielinski on October 16 was based purely on the second-hand reports of Zielinski's conduct brought to his attention by other employees.  (Tr. I-173.)  The jury, in determining whether the complaints lodged against Zielinski were legitimate or whether they represented a method of discriminatory harassment, was permitted to credit the testimony of Zielinski, Walsh, and LaPlaunt over the allegations presented by the defense through

7

contradictory testimony and HR documentation.

After the October 16 incident, SPS transferred Zielinski to another department to separate him from the employees with whom he had conflict.  (Tr. II-75.)  However, Strickland and JJ did not stop lodging complaints that Zielinski was harassing them.  For example, when Zielinski would return to the thread roll department to get coffee, Strickland repeatedly told Costello that Zielinski kept whistling and staring at he and JJ.  (Tr. II-156.)  Costello then ordered Zielinski to stay out of the thread roll department.  (Tr. II-75-76.)

Zielinski stayed out of the thread roll department after he was ordered to do so by Costello, yet Strickland continued to assert complaints that Zielinski would annoy and taunt him by waiting for him at the exit of the building and whistling and staring.  (Tr. II-76-77.)  On January 20, 2009, Costello claimed to have personally observed Zielinski bothering Strickland as Strickland left the building, and he reported the matter to HR for further action.  (Tr. II-40.)  When questioned about this conduct the following day, Zielinski again denied that he was whistling and staring at his co-workers, consistent with his past denials of any harassing conduct.  (Tr. II-50-51.)  Nevertheless, Costello sent Zielinski home pending further investigation.  (Tr. II-50.)

That investigation revealed, among other things, that the individuals who worked with Zielinski in his new department had not experienced any problems with Zielinski.  (Tr. II-39, 50.)  Zielinski was subsequently interviewed by phone by HR Manager Rick Uth ("Uth").  Zielinski explained to Uth that he thought he had been transferred out of the thread roll department because people did not like his Polish accent.  (Tr. II-194-95.)  Uth did not investigate Zielinski's concerns and after the interview, he, Costello, and Creed decided to terminate Zielinski's

employment.  (Tr. I-245; II-81, 197-99.)

In light of all of the evidence described above, a reasonable factfinder could infer that Zielinski was suspended and terminated because of a pattern of misconduct and insubordination. But the factfinders here—the jury—reasonably inferred otherwise, and the Court may not "weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version."  Fowler v. UPMC Shadyside, 578 F.3d 203, 213 n.8 (3d Cir. 2009).

The verdict reflects that the jurors believed Zielinski's testimony that he was subjected to various anti-Polish insults from SPS personnel on multiple occasions.  They also believed his testimony, which was corroborated by the testimony of two individuals who worked with him daily, that he was not harassing Strickland and JJ, and that he was being harassed himself through their false accusations to management.  Finally, they believed that one or more of the managers or supervisors involved in the adverse employment actions—Costello, Creed, and/or Uth—acted out of the same anti-Polish bias demonstrated by Weikel, Strickland, and/or JJ.  In other words, the jury believed that SPS's reasons for disciplining Zielinski were pretextual.  In the circumstances presented here, the Court cannot say that the record in this case precludes a reasonable juror from drawing those inferences, though other reasonable people might have interpreted the evidence differently.

## 2. Zielinski's Retaliation Claim

To establish a primae facie claim of retaliation, a plaintiff must show: (1) he was engaged in a protected activity; (2) he suffered an adverse employment action after or contemporaneous with his protected activity; and (3) there is a causal link between his protected activity and the adverse employment action.  Fogleman v. Mercy Hosp. Inc., 283 F.3d 561, 567-68 (3d Cir.

2002).  Once the plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory explanation for the adverse employment action.  Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006).  The burden then shifts once again to the plaintiff to prove that this explanation is pretextual.  Id.  SPS contends that the evidence at trial was insufficient as a matter of law to demonstrate the necessary causal link between Zielinski's protected activity and his suspension and termination.  SPS further contends that even if Zielinski demonstrated causal link, he did not demonstrate that SPS's articulated reasons for the adverse employment actions were pretextual.

To repeat and in some instances supplement the evidence already recited above, the evidence at trial established the following facts, viewing that evidence in the light most favorable to Zielinski.  Beginning in 2005 and occurring on at least four more occasions, Zielinski complained to plant management that he was being mistreated because of his Polish background.  Specifically, he complained to Zataveski in 2005, to Costello in 2007, to Creed in September 2008, to Walsh in October 2008, and to Uth in January 2009.  (Tr. I-55, 151, 175, II-56, 194-95.) There is no evidence in the record that anyone ever accused Zielinski of whistling, staring, or otherwise harassing other employees until after he first complained of anti-Polish bias in 2005. Indeed, a mere five days after his final complaint about anti-Polish bias, Zielinski was terminated.

Moreover, Zielinski filed a charge of workplace discrimination on September 16, 2008, which SPS received notice of on September 30, 2008.  (Tr. I-57-58.)  Less than three weeks after receiving that notice, Zielinski was transferred out of the thread roll department, and less than four months later he was terminated.  These examples of temporal proximity might themselves

suffice to show causal link, but the Court need not consider them alone because the plaintiff produced other evidence that supported a causal connection and was sufficient to rebut SPS's non-retaliatory explanation for its conduct.

For instance, the evidence at trial also reflected that SPS's investigations into Zielinski's claims of discrimination were brief and, in some instances, non-existent.  To give a few examples, apart from questions they asked Zielinski himself, neither Costello, Walsh, nor Uth investigated the complaints of discrimination made to them in May 2007, October 2008, and January 2009, respectively.  (Tr. I-175, II-56, 194-98.)  Although SPS provided various explanations for disregarding Zielinski's complaints, including that they were incredible or that he could provide them with no eye witnesses to the misconduct he alleged, the jury was not required to credit this explanation over Zielinski's own and different explanation.  The jury obviously determined that Zielinski's account of the discrimination he was suffering was credible; it was permitted to further infer that SPS's failure to thoroughly investigate his complaints of discrimination and to discipline the alleged offenders was indicative of its unlawful motives.  See Woodson v. Scott Paper Co., 109 F.3d 913, 923 (3d Cir. 1997) ("[A]n atmosphere of condoned racial harassment in a workplace increases the likelihood of retaliation for complaints in individual cases.") (internal quotation marks omitted).

Zielinski also produced evidence that some of the complaints prompting his discipline arose in suspect circumstances, and the subsequent investigations into those complaints were cursory or included findings that supported Zielinski's own account of what had happened.  For example, when Costello allegedly witnessed the conduct in January 2009 that directly prompted Zielinski's termination, he never discussed his observations with Strickland or Zielinski; rather,

he immediately reported Zielinski to HR.  (Tr. II-50.)  Strickland was contacted only ex post, when Costello asked him to provide a written statement with the specific purpose of supporting the decision to terminate Zielinski.  (Tr. II-87-88, 153.)

Zielinski was eventually interviewed by Uth about whether he had harassed Strickland, but Zielinski denied acting improperly.  Furthermore, Zielinski's co-workers in his new department confirmed to HR that they had never seen him harass other employees during the three months they had been working with him.  (Tr. II-39, 48-49, Exh. P-20.)  Nevertheless, despite the nature of Costello's initiation of the complaint, Zielinski's denial, and the reports of his co-workers, Zielinski was terminated.  Finally, Costello admitted at trial that, aside from Zielinski, he was unaware of any employee in the company's history who had been disciplined in any manner for whistling at a co-worker.  (Tr. II-52.)

 In sum, in light of (1) the evidence demonstrating temporal proximity between Zielinski's complaints of discrimination and the adverse employment actions, (2) the minimal investigations into his complaints of racial discrimination, and (3) the circumstances prompting his termination—and especially in light of the importance of credibility determinations with respect to the particular evidence introduced at this trial—the Court cannot conclude that SPS is entitled to judgment as a matter of law.  The evidence in Zielinski's favor was not overwhelming, but it was sufficient for a jury to properly find a verdict in his favor.

A party that presents its case through to a jury verdict must recognize that, where the evidence allows reasonable people to disagree, it may be that no member of the jury agrees with the party's preferred interpretation.  That is the risk SPS assumed here, and it must now abide by the consequences.  It is not the Court's role to usurp the jury function in these circumstances.

See, e.g., Eshelman v. Agere Sys., Inc., 564 F.3d 426, 433 (3d Cir. 2009) ("[E]ntry of judgment

as a matter of law is a 'sparingly' invoked remedy" properly utilized only "where the record is

critically deficient of the minimum quantum of evidence in support of the verdict.").

### 3.  Zielinski's Hostile Work Environment Claim

To establish his claim for a hostile work environment, Zielinski must have proved: (1) he

suffered intentional discrimination because he is Polish; (2) the discrimination was pervasive and

regular; (3) the discrimination would have detrimentally affected a reasonable Polish person in

his position; and (5) respondeat superior liability exists.  West v. Phila. Elec. Co., 45 F.3d 774,

753 (3d Cir. 1995).

SPS contends that it is entitled to judgment as a matter of law because Zielinski did not

demonstrate harassment sufficiently severe or pervasive to satisfy this standard.  Specifically,

SPS claims that "six ethnic remarks over two years . . . are not an actionable hostile work

environment."  Def. Br. at 27.  Whether or not this is so need not be addressed by the Court,

because that was not the only evidence of discrimination presented to the jury.

SPS's argument proceeds from the mistaken premise that only discriminatory comments

can create a hostile work environment, though it offers no case law to support this proposition.

Here, Zielinski presented evidence that he was subjected to discrimination not only through

ethnic comments, but also through the myriad false complaints and reports initiated by

Strickland, JJ, and Costello.  The jury was permitted to conclude that these incidents, not merely

the anti-Polish comments, contributed to the hostile work environment at SPS.  Accordingly,

SPS's citations to cases about stray and infrequent discriminatory comments are inapposite, as

Zielinski introduced evidence from which the jury could have reasonably concluded that

13

discrimination at SPS was more pervasive.

For essentially the same reason, SPS's assertion that Zielinski's hostile work environment claim is barred by the statute of limitations is without merit.  Because he filed his EEOC charge on September 16, 2008, Zielinski was required to allege that some element of the hostile work environment occurred after November 21, 2007.  42 U.S.C. § 2000e-5(e)(1).  SPS argues that Zielinski failed in this regard because the record contains no evidence of discriminatory comments made after that date.  Assuming arguendo that this description of the record is accurate, Zielinski's claim is not barred so long as he alleged some other element of the hostile work environment within the proper time frame.  This he undoubtedly did: among other things, he introduced evidence that a number of complaints were lodged against him by Strickland and JJ between November 21, 2007 and September 16, 2008.  (Tr. I-223-25, II-171-72, 176-78, Exh. D-6.)  In finding SPS liable for the hostile work environment claim, the jury necessarily determined that at least one of these incidents or a similar timely incident in the record was discriminatory in nature.  Accordingly, SPS is not entitled to judgment as a matter of law.

### B.  Motion for a New Trial: Liability

In the alternative to its Motion for Judgment as a Matter of Law on Zielinski's claims for liability, SPS seeks a new trial.  SPS does not allege any errors in evidentiary rulings or in the charge to the jury, but rather seeks a new trial for the same reasons it seeks judgment as a matter of law.  This alternative relief on the liability claims is also denied.  The Court is not of the view that the verdict on liability was so against the weight of the evidence as to merit the exercise of the Court's discretion to grant a new trial.  Indeed, SPS's depiction of the record in its brief on this Motion is too one-sided and improperly discounts, among other things, the nature and extent

of Zielinski's testimony at trial.  Although, as stated above, reasonable people could disagree about whether Zielinski proved his case, from this Court's perspective, a new trial on liability is not appropriate.

### C.  Motion for a New Trial: Damages

SPS attacks the jury's damages awards of $100,000 in front pay, $250,000 in emotional distress damages, and $500,000 in punitive damages as unsupported by the evidence and worthy of remittitur (SPS does not challenge the jury's award of $85,000 in back pay).  Each challenged portion of the damages award is discussed in turn.

#### 1.  Front Pay

SPS claims the jury's award of approximately six years of front pay totaling $100,000 is too speculative based on the limited evidence in the record.  Front pay may be awarded  "for a reasonable future period required for the victim to reestablish [his] rightful place in the job market."  Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 87 (3d Cir. 2009) (internal quotation marks omitted).  It is appropriate where "a victim of employment discrimination will experience a loss of future earnings because he or she cannot be placed in the employment position that was unlawfully denied."  Bartek v. Urban Redev. Auth. of Pittsburgh, 882 F.2d 739, 747 (3d Cir. 1989).  The case law is "well settled that the risk of lack of certainty with respect to projections of lost income must be borne by the wrongdoer, not the victim."  Id. at 746 (internal quotation marks omitted).

Here, the record reflects that Zielinski worked for SPS for almost 11 years, had no work performance problems as a machinist, and had no intention of leaving his job.  (Tr. I-38-39, 63.) After he was terminated, he attempted to mitigate his damages by finding new employment and

was successful in doing so about six months after his termination.  (Tr. I-64.)  At the time of trial, he was employed with Greyhound at a salary of $37,000, which was $17,000 dollars less than his salary at SPS.  (Tr. I-68-69.)  The jury apparently believed it would take Zielinski just under six years in the job market to regain the level of employment he had previously enjoyed at SPS.  The Third Circuit and other district courts in this Circuit have upheld even larger and arguably more speculative awards reflecting longer periods of future lost wages.  See, e.g., Donlin, 581 F.3d at 88 (affirming $101,800 front pay award representing 10 years of lost wages); Bianchi v. City of Philadelphia, 80 Fed. Appx. 232, 237-38 (3d Cir. 2003) (affirming $512,500 front pay award representing 13 years of lost wages); Bates v. Bd. of Educ. of Capital Sch. Dist., 2000 WL 376405, at *9-10 (D. Del. Mar. 31, 2000) (denying motion for remittitur of front pay award representing approximately twenty years of lost wages at $20,565 per year).  Under the circumstances, the Court finds that the $100,000 amount is reasonable and the award should not be reduced.

      **2.  Emotional Distress Damages**

      SPS argues that the jury's award of $250,000 in emotional distress damages was excessive and unsupported by the record.  To support its contention, SPS relies upon Spence v. Bd. of Ed. of the Christina Sch. Dist., 806 F.2d 1198 (3d Cir. 1986).  In Spence, the plaintiff was transferred out of her position as an art teacher to a position at a different school in retaliation for the exercise of her First Amendment rights.  The Court of Appeals affirmed a remittitur of all emotional distress damages in the case because "[t]he evidence of emotional distress consisted chiefly of plaintiff's own testimony that she was depressed and humiliated by the transfer and that she has lost her motive to be creative."  Id. at 1201.

SPS also cited <u>Valentin v. Crozer-Chester Med. Ctr.</u>, 986 F. Supp. 292 (E.D. Pa. 1997), which involved an employee terminated in retaliation for the exercise of her First Amendment rights.  At trial, the only evidence introduced about the plaintiff's emotional distress was her own testimony that she was depressed and upset by the termination.  <u>Id.</u> at 305.  The defendant moved for judgment as a matter of law or, in the alternative, for a new trial, and the trial court granted the motion in part, remitting the jury's $209,000 award for emotional distress damages to $52,250 because the "thin evidence of rather limited damages" justified only a "minimal award for intangible injuries."  <u>Id.</u> (internal quotation marks omitted).

Like the plaintiffs in <u>Spence</u> and <u>Valentin</u>, Zielinski offered no proof of his emotional distress except his own testimony.  The entirety of that testimony regarding emotional distress is as follows:

> Q.  Rich, please tell the jury how these [anti-Polish] comments [by Weikel] made you feel, emotionally?
> A.  It's – it's very offensive.  I was just trying to do the good job and it's very humiliating and stressful.
> (Tr. I-40.)
>
> Q.  Would you please tell the jury how these [anti-Polish] comments [by Strickland and JJ] made you feel?
> A.  How I said, it's very offensive.  Very humiliating.  I think that nobody should go through this kind of treatment at workplace or anywhere else.
> (Tr. I-44.)
>
> Q.  Rich, . . . did getting fired also affect you emotionally?
> A.  Yes.  I was first time in my life when I get fired.  I never fired before. And for the reason which I was fired, it's – I still cannot concentrate, cannot even think about it.  I have problems sleeping.  Sometimes I wake up at night and when I start think about all those events, the night is gone, I cannot sleep at all.  I would like just on with my life.
> (Tr. I-70.)

No one else testified to the emotional injuries that Zielinski sustained, and he never sought any medical treatment for those injuries. The record also reflects that Zielinski functioned well enough to obtain employment approximately six months after his termination. (Tr. I-64.)

On October 18, 2011, this Court invited Zielinski to submit a supplemental brief specifically discussing Spence and related case law bearing upon the question of emotional distress damages. In his responsive filing, Zielinski could not point to additional evidence in the record supporting the jury's emotional distress damages and never distinguished or even acknowledged Spence or Valentin. Rather, Zielinski's cursory discussion of the issue referenced cases such as Gagiardo v. Connaught Labs., Inc., 311 F.3d 565 (3d Cir. 2002), in which the record included substantially more evidence of emotional distress damages than was produced in this case.

In these circumstances, an award of $250,000 for emotional distress damages shocks the conscience of the Court. The amount is grossly excessive and unsupported by the testimony Zielinski gave at trial. The Court's finding on this point is consistent with Spence, Valentin, and their progeny, which Zielinski did not distinguish despite ample opportunity to do so. Accordingly, the Court will grant SPS's Motion insofar as it seeks a new trial on damages, unless, within 30 days, Plaintiff accepts a remittitur limiting emotional distress damages to $100,000. Anything beyond that amount cannot be justified by the record.

### 3. Punitive Damages

SPS also challenges the jury's award of $500,000 in punitive damages. SPS claims that the award is improper because the record contains no evidence of malice or reckless indifference to federally protected rights, see 42 U.S.C. § 1981a(b)(1), and because the award is excessive in

light of the Supreme Court's opinions in <u>BMW of N. Am, Inc. v. Gore</u>, 517 U.S. 559 (1996) and

<u>State Farm Mutual v. Campbell</u>, 538 U.S. 408 (2003).  <u>Gore</u> and <u>Campbell</u> direct courts

reviewing punitive damages awards to consider three guideposts: (1) the degree of

reprehensibility of the defendant's conduct, (2) the ratio of actual harm to punitive damages, and

(3) a comparison of punitive damages to the civil or criminal penalties that can be imposed.

<u>Gore</u>, 517 U.S. at 575-85; <u>Campbell</u>, 538 U.S. at 418.

 The Court is not persuaded by SPS's assertion that the evidence was insufficient as a

matter of law to show malice or reckless indifference.  Much of the relevant evidence regarding

the intent and motivations of SPS's management required the jury to make credibility

determinations about the various testifying witnesses, including Zielinski, Costello, Creed, and

Walsh.  The jury apparently found Zielinski's account of SPS's intentions credible and the other

witnesses' testimony incredible.  The jury may also have relied on evidence such as, <u>inter alia</u>,

SPS's cursory and sometimes non-existent investigations into Zielinski's complaints of racial

discrimination, as well as Creed's testimony at trial that he did not consider calling a person a

"dumb Polack" or calling them the "N word" to be discriminatory unless the comment was

coupled with an adverse employment action.  (Tr. I-193-95.)

 That said, the Court is shocked by the $500,000 award and agrees with SPS that it was

excessive under Supreme Court guidelines.  In considering the first and most important factor

bearing upon the reasonableness of a punitive damages award—that is, the degree of

reprehensibility of the defendant's conduct—this Court must assess whether "the harm caused

was physical as opposed to economic; the tortious conduct evinced an indifference to or reckless

disregard of the health or safety of others; the target of the conduct had financial vulnerability;

the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." Campbell, 538 U.S. at 418.  The first two considerations militate decisively in favor of reducing the award, as Zielinski's harm was not physical and SPS did not disregard the health or safety of others.  To the extent that the remaining considerations militate in favor of awarding punitive damages, those concerns can be adequately accounted for in the circumstances of this case by permitting a substantial, though reduced, award.

The second Supreme Court guidepost, the ratio of actual harm to punitive damages, also supports a reduction.  The Court fears that the jury's excessive award of $250,000 in emotional distress damages—or perhaps the same thinking that led to that outcome—is partly responsible for the jury's decision to award $500,000 in punitive damages.  As noted above, the evidence of Zielinski's actual emotional distress does not support an award of more than $100,000.  The additional $150,000 (i.e., 34.5% of the total non-punitive damages) cannot be reasonably awarded.  Consistent with that determination, the Court is inclined to reduce the punitive damages proportionately—that is, the Court will remit 34.5% of the award and Defendant will receive the remaining 65.5%, or $327,500.

Before rendering a final decision, however, the Court must consider the third Supreme Court guideline: how the punitive damages compare to the civil and criminal penalties that may be imposed for the same conduct.  As SPS explains in its brief, the maximum amount of compensatory and punitive damages that can be awarded under Title VII for violations by an employer of SPS's size is $300,000.  42 U.S.C. § 1981a(b)(3)(D).  Because Zielinski also sued under 42 U.S.C. § 1981, the statutory cap does not technically preclude a larger award; however,

an award as large as the one here is troubling in light of the similarity between Zielinski's Title VII and § 1981 claims.  Accordingly, consideration of the third guidepost confirms that a significant reduction in punitive damages is appropriate.

In sum, the Court finds a punitive damages award of $500,000 to be unreasonable in light of the facts and circumstances of this case.  The Court believes that the largest reasonable award is 65.5% of the original award, or $327,500.  Unless Zielinski agrees to remit the portion of punitive damages beyond that amount, SPS's request for a new trial on damages will be granted.

## V.    <u>Conclusion</u>

For the foregoing reasons, SPS's Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial is (1) DENIED insofar as it seeks judgment as a matter of law, (2) DENIED insofar as it seeks a new trial on liability, and (3) GRANTED insofar as it seeks a new trial on damages, UNLESS, within 30 days, Zielinski accepts a remittitur limiting emotional distress damages to $100,000 and punitive damages to $327,500, in which event the Motion will also be DENIED insofar as it seeks a new trial on damages.

The Court urges counsel to discuss Plaintiff's Application for Attorney's Fees and Costs (ECF No. 57) and his Motion to Incorporate Pre-Judgment Interest (ECF No. 58) in light of the Court's Order of today to determine if an agreement can be reached.  In the absence of an agreement, the parties may submit briefs supplementing or amending their contentions regarding those Motions.  Zielinski's brief shall be submitted within seven (7) days of this Order, and SPS shall respond within seven (7) days of Zielinski's filing.  Both briefs are limited to ten (10) pages double-spaced.

An appropriate Order follows.

O:\CIVIL 09-10\10-3106 - Zielinski\Zielinski JNOV Memo.wpd